HOUSTON, Justice.
The United States District Court for the Northern District of Alabama, Southern Division, pursuant to Rule 18, Ala.RApp.P., has certified two questions of law to this Court.
QUESTIONS
‘Whether the Alabama Legislature in establishing the county-wide Civil Service System under Act. No. 248 (1945), as amended by Acts No. 677 and 782 (1977), intended for all common laborers to be part of the unclassified service or only for common laborers who are not employed on a full-time basis and are not required to devote their time and services exclusively to such counties and municipalities to be part of the unclassified service?
*502 “What statutory power or authority, if any, does the Personnel Board of Jefferson County have to bring the position of common laborer within the classified service system under Act No. 248 (1945), as amended by Acts No. 677 and 782 (1977)?”
ANSWERS
The legislature, in establishing the county-wide civil service system under Act No. 248, as amended by Act No. 677 and Act No. 782, intended for all “common laborers” to be part of the unclassified service. As a result, the personnel board has no statutory authority to incorporate “common laborers” into the classified service.
BACKGROUND AND DISCUSSION
The following background information was set forth by the district court for our consideration in answering these certified questions:
“This lawsuit arises out of the alleged discriminatory and unconstitutional treatment of common laborers by Defendant Personnel Board of Jefferson County as well as other Defendants. Taken under submission by this court are a number of motions for summary judgment filed by the various parties in this case based if not totally, at least partially, upon Act No. 248 (1945) — the Enabling Act — as most recently amended by [Acts] 677 and 782 (1977). The Enabling Act establishes a countywide Civil Service System for areas with a population size of 400,000 or more persons that affects certain personnél whose compensation is paid in whole or in part by public funds from such counties or municipalities located within such jurisdictions. Section 2 of Act No. 248 creates county personnel boards and limits the bodies’ authority to govern persons holding positions in the classified service. As amended by Act No. 782, Section 2 of Act No. 248 defines the unclassified and the classified services as follows:
“ ‘The unclassified service shall include: All employees or appointees of a city or county board of education, or a library board; persons engaged in the profession of teaching or in supervising teaching in the public schools; officers elected by popular vote; the judge of any court; the county attorney; the director of personnel; the county health officer, provided, however, that if any law or laws now or hereafter enacted shall cause the offices of all other county health officers in the State of Alabama to become subject to any state or county civil service or merit system now or hereafter established, in such event the office of county health officer in each county subject to the provisions of this Act shall be a position in the classified service as herein defined; one private secretary of a member of the governing body and of each officer except judges elected by vote of the people; internes [sic], resident physicians, resident dentists, student technicians and student nurses, while undergoing training in a county health department or in a hospital maintained by public funds; common laborers, members of boards who are not employed on a full-time basis and are not required to devote their time and services exclusively to such counties and municipalities therein; attorneys, physicians, surgeons and dentists who with the express or implied permission of an appointing authority or of such county or city hold themselves out for employment by others in the same or a like line of work as that performed by them for such appointing authority; where there are two county sites or county courthouse sites maintained in one county and a county officer or officers are required to maintain an office in one courthouse and a branch [or] subsidiary office in the other of said courthouses, the chief deputy of each elective officer in charge of such branch office. The classified service shall include all other offices and positions in the county and municipal service, including the services of the County Board of Health and the Board of Registrars of such county, except as otherwise provided in this Act.’
“Act of May 28, 1977, No. 782, sec. 1, § 2, 1977 Ala.Acts 1347, 1848 (emphasis added). Interpreting the above emphasized language, Defendants assert that the En *503 abling Act characterizes all common laborers as unclassified employees. Additionally, the Personnel Board for Jefferson County contends that it has no power under the Enabling Act to bring the position of common laborers within the classified service system inasmuch as it has no authority or jurisdiction to govern the unclassified service. Plaintiffs counter that Defendants have misinterpreted and/or misapplied the Enabling Act arguing that the Alabama Legislature intended only for common laborers who are not employed on a full-time basis with a particular county or municipality to be part of the unclassified service. Although this court recognizes that as a matter of practice, common laborers have not been treated as merit system or classified employees under Act No. 248, this court is unaware of any decision by the Supreme Court of Alabama that has specifically interpreted Section 2 of the Enabling Act as it relates to common laborers and in light of the version contained in Act No. 248’s predecessor— Act No. 284 (1935), as amended by Act No. 410 (1939):
“ ‘The Unclassified Service shall include: ...; common laborers; Members of Boards who are not employed on a full-time basis and are not required to devote their time and services exclusively to such counties and municipalities therein;’
“Act of Sept. 15, 1939, No. 410, sec. 1, § 2(b), 1939 Ala.Acts 542, 544 (emphasis added) (codified as amended at Ala.Code, tit. 12, § 134 (1940)) (Title 12 repealed by Act of Aug. 17, 1951, No. 451, 1951 Ala. Acts 814, 814).”[1]
Alabama Acts 1935, Act No. 284, § 2, provided as follows:
“PERSONNEL BOARD CREATED AND THE EXTENT OF ITS AUTHORITY DEFINED. There is hereby created and established, in and for each separate county of the State of Alabama which has a population of two hundred thousand or more people according to the last Federal Census and also for each county of the State of Alabama which shall hereafter come into such population class according to any subsequent Federal Census, a Personnel Board for the government and control by Civil Service rules and regulations and practices hereinafter set out or authorized of all employees and appointees of such counties and the municipalities therein and of each and every appointing authority therein and such Board is now given and vested with such power, authority and jurisdiction. Provided, however, that such Board shall not govern or control the employees or appointees of a city or county Board of Education, nor of a city and/or County Board of Health nor of a city and/or county Library Board, except in so far and to such extent only as such Board of Education, Board of Health or Library Board may by resolution duly filed with the Personnel Board, request, and the Personnel Board, by like resolution, consent to govern and control. Provided, however, that any municipality in such county with a population according to the then last Federal Census of less than twelve Thousand five hundred people may, by resolution of its governing body duly filed with the Personnel Board, request that it be excepted and excluded from the provisions of this Act, and the Personnel Board, shall thereafter cease to administer this Act to the employees of such municipality until such time as the Governing body of such municipality may rescind such resolution or until such municipality shall, according to a subsequent Federal Census become a municipality with a population of more than twelve thousand five hundred people. Provided farther, that this Act shall in no event be construed to apply to a person engaged in the profession of teaching or in supervising teaching in the public schools nor to officials elected *504 by vote of the people nor to the Judge of any Court, nor to the County Attorney, nor the Chief of the Fire Department or the Chief of Police of any city nor to the Chief Deputy Sheriff of any county nor to the Personnel Director nor to common laborers engaged exclusively in unskilled labor. It is provided further, that where there are two County sites or County Court House sites maintained in one county and a county officer or officers are required to maintain an office in one Court House and a branch or subsidiary office in the other of said Court Houses, the Chief Deputies of all elective officers in charge of such branch office shall be exempt from the provisions of this Act. It is hereby provided that in the event a Chief of Police, Chief of Fire Department of any city that may come under this Act or Chief Deputy Sheriff of any county that may come under this Act, who is in office when this Act goes into effect or who shall later be promoted from lower grades or classifications, in the Police, Fire, or Sheriffs Department of such city or county, to one of such offices, and shall thereafter be removed, for any cause except a cause involving moral turpitude, from such office, such removed officer shall have the option to return to the grade, classification or position in such department which he occupied before being appointed to such office of Chief of Police, Chief of Fire Department, or Chief Deputy Sheriff.”
(Emphasis added.) In 1939, the legislature amended § 2 of Act No. 284 to read in pertinent part as follows:
“PERSONNEL BOARD CREATED AND THE EXTENT OF ITS AUTHORITY DEFINED, (a) There is hereby created and established, in and for each separate county of the State of Alabama which has a population of two hundred thousand or more people according to the last Federal Census and also for each county of the State of Alabama which shall hereafter come into such population class according to any subsequent Federal Census, a Personnel Board for the government and control by rules and regulations and practices hereinafter set out or authorized of all employees and appointees holding positions in the classified service of such counties and the municipalities therein whose population according to the last Federal Census was five thousand or more and such Board is now given and vested with such power, authority and jurisdiction. Provided, however, that such Board shall not govern any officers or appointees holding positions in the unclassified service, (b) The Unclassified Service shall include: all employees or appointees of a city or county Board of Education, a Board of Health or a Library Board; persons engaged in the profession of teaching or in supervising teaching in the public schools; officers elected by popular vote; the judge of any court; the County Attorney; the Director of Personnel; one Private Secretary of a member of the governing body; internes [sic], resident physicians, student technicians and student nurses, while undergoing training in a hospital maintained by public funds; common laborers; Members of Boards who are not employed on a full time basis and are not required to devote their time and services exclusively to such counties and municipalities therein; attorneys, physicians and surgeons who with the express or impled permission of an appointing authority or of such county or city hold themselves out for employment by others in the same or a like line of work as that performed by them for such appointing authority; where there are two county sites or county courthouse sites maintained in one county and a county officer or officers are required to maintain an office in one courthouse and a branch or subsidiary office in the other of said courthouses, the Chief Deputy of each elective officer in charge of such branch office. The Classified Service shall include all other offices and positions in the county and municipal service, except as otherwise provided in this Act. (c) The Classified Service shall not include the positions of Chief Deputy Sheriff of a county, or Chief of the Police Department, or Chief of the Fire Department of a municipality, until the expiration of the present term of office provided by law for the appointing authority, or until the termination of the tenure of *505 the person occupying the position of Chief Deputy Sheriff, Chief of the Police Department, or Chief of the Fire Department, at the time this Act becomes effective. Upon either the expiration of the present term of office provided by law for the appointing authority, or the termination of the tenure of the person occupying the position of Chief Deputy Sheriff, Chief of the Police Department, or Chief of the Fire Department, at the time this Act becomes effective, (whichever happens first), the position shall become subject to the Classified Service; provided, however, that if a person who holds such position at the time this Act becomes effective, continues to hold such position until the expiration of the present term of office provided by law for the appointing authority, the appointing authority for the next succeeding term may appoint such person as the first incumbent of the position without regard to the provisions of this Act respecting the selection and appointing of personnel in the Classified Service; and, if such person is so appointed, he shall be deemed to have earned permanent civil service status, and he shall thereafter be subject to all provisions of this Act relating to personnel in the Classified Service. In the event any person now occupying the position of Chief of the Police Department, or Chief of the Fire Department, was employed in a position in the department of which he is now Chief, at the time he was appointed Chief, and is hereafter removed from the position of Chief, he shall have the option to return to a position in the same grade or classification of the department of which he is now Chief as was the position held by him at the time he was appointed Chief, unless his removal is for misconduct.”
Ala.Acts 1939, No. 410. (Emphasis added.) In 1945, the legislature passed Act No. 248, which provides, in pertinent part, that “common laborers, members of boards who are not employed on a full-time basis and are not required to devote their time and services exclusively to such counties and municipalities therein” are excluded from the classified service. See the district court’s background discussion, supra, for the full text of the pertinent portion of § 2 of the 1945 act. In addition, § 29 of Act No. 248 provides in pertinent part:
“The civil service system existing at the time of the passage of this Act, in any county to which this Act shall become applicable upon its passage, shall be continued in force and effect under the terms and provisions of this Act, without any change in the rights, privileges, duties, benefits, or liabilities upon the part of any person or body, except to the extent that the terms and provisions of this Act make such change. In other words, such previously existing civil service system shall be absorbed and continued into the civil service system provided by this Act, with no changes of any kind to be made except to the extent that this Act differs in its provisions from the provisions of such previously existing civil service system.”
It is clear that if the legislature had not in Act No. 248 substituted a comma after the words “common laborers” for the semicolon that had been used after those words in the 1935 and 1939 acts, there would be no logical basis for questioning whether the legislature intended to exclude “common laborers” from the classified service, and the plain meaning of Act No. 248 would have to be given effect without a resort to any statutory construction. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Association of Tuscaloosa County, 589 So.2d 687 (Ala.1991). However, because the substitution of the comma for the semicolon in Act No. 248 at least presents a question as to whether the legislature intended to make a substantive change in the act by extending the protections of the civil service laws tó a class of unskilled laborers “who are ... employed on a full-time basis and are ... required to devote their time and services exclusively to [their employing] counties and municipalities,” we find it necessary, in order to ascertain the legislature’s intent, to consider the legislative history of Act No. 248, the personnel board’s interpretation of the act, and the grammatical structure of the language in question.
As previously noted, the legislature made it abundantly clear in the 1935 and 1939 acts that unskilled laborers, whether *506 employed full-time or employed part-time, were not protected under the civil service laws. The legislature also clearly stated in § 29 of Act No. 248 that no substantive changes had been made to the 1939 act unless those changes were specifically delineated in Act No. 248. For the 10 years preceding the passage of Act No. 248, the personnel board had interpreted the 1935 and 1939 acts as excluding all unskilled laborers from the classified service. The legislature’s use of the comma instead of the semicolon in Act No. 248 did not alter the personnel board’s understanding of the legislature’s intent and, in fact, the board’s interpretation of Act No. 248 has not changed since 1945. The personnel board’s interpretation of Act No. 248, although not conclusive, is nonetheless entitled to great deference from this Court with respect to the question of legislative intent. Employees’ Retirement System of Alabama v. Oden, 369 So.2d 4 (Ala.1979). It is also significant that the legislature has given no indication (by amending Act No. 248) that it disagrees with the personnel board’s interpretation.
Furthermore, in light of the clear wording of the 1935 and 1939 acts and the interpretation placed on those acts by the personnel board, we cannot reasonably conclude that the legislature would attempt to make such a substantive change in the 1945 act by merely substituting a comma for the semicolon that had followed the term “common laborers.” As an examination of § 2 of Act No. 248 reveals, the groups referred to by the terms “common laborers” and “members of boards” do not logically belong together, and we cannot, without resorting to a strained interpretation of the act, conclude that those two terms were intended to be linked together and those terms modified equally by the phrase “who are not employed on a full-time basis and are not required to devote their time and services exclusively to such counties and municipalities therein.” On the other hand, we note that even if the legislature did intend to substitute the comma for the semicolon, we still could not conclude that it intended to extend the protections of the civil service laws to a group of full-time “common laborers.” In these respects, we agree with the conclusion reached by Dr. James C. Raymond, professor and director of English composition at the University of Alabama, who examined Act No. 248 for the defendants:
“In my judgment, there is no doubt that Section 2 of Act No. 677 (p. 1168) places ‘common laborers’ in the category of ‘unclassified service,’ because context prevents any other reasonable interpretation of that phrase; to wit, section 2 includes two consecutive parallel lists, one beginning with the phrase, ‘The unclassified service shall include,’ the second beginning with the phrase, ‘The classified service shall include’; the effect of this parallel construction is to mark a clear contrast between employees listed in the first sentence (the unclassified employees) and those designated in the second (classified employees); the phrase ‘common laborers’ occurs as an item in a long list of unclassified employees.
“Further I find no merit in the contention that the comma (where one would expect a semicolon) before ‘members of boards’ allows the modification following ‘members of boards’ to apply to common laborers, because there is no grammatical rule or precedent to support such an interpretation; because to apply the restrictive clause modifying ‘members of boards’ to the phrase preceding the comma would be to force a reading contrary to normal conventions of grammar and usage; and because ‘common laborers’ and ‘members of boards’ are both in a long list of unclassified employees, so that exceptions within this category would have to be (and in fact are) clearly signalled; and because the use of a [comma] where one would expect a [semicolon] in this sentence is a typographical error or editorial oversight, on a par with the extra ‘e’ in ‘internes’ four lines above it — neither error changing the meaning or providing a basis for misconstruing the obvious intent of the sentence, which is to list unclassified employees.
“In addition, if the legislature had intended to distinguish part-time common laborers from full-time common laborers, it could have easily done so by adding the words ‘part-time’ before ‘common laborers,’ and certainly not by relying on an *507 implausible pairing of common laborers with members of boards; in addition, had that been the legislature’s intent, it seems likely that it would have emphasized this distinction by specifying ‘full-time common laborers’ in the second sentence (the sentence designating classified employees), as it in fact did for members of boards, by specifying those boards that are considered classified employment (specifically, ‘the County Board of Health and the Board of Registrars’).”
Based on the foregoing, we conclude that the legislature did not intend in 1945 to include full-time unskilled laborers in the classified service. Because we have reached that conclusion, our answer to the second question is dictated by Henderson v. Arrington, 392 So.2d 806, 808 (Ala.1980), wherein this Court acknowledged that the personnel board is “vested with broad power and authority to establish rules and regulations necessary to govern and control ‘all employees holding positions in the classified service of Jefferson County and all municipalities within that county.” 392 So.2d at 808. The Court went on to state that the board “does not, however, govern or control persons employed in the ‘unclassified’ services.” Id. Based on the wording of Act No. 248 and this Court’s holding in Henderson, we conclude that the personnel board has no authority to “bring the position of common laborers within the classified service system under Act No. 248.” That is purely a matter of legislative concern.
QUESTIONS ANSWERED.
HOOPER, C.J., and MADDOX, SHORES, and KENNEDY, JJ., concur.

. The district court noted the following in its discussion of the background of this action: "As the questions contained in this certificate involve the construction of state statutory law, the ‘facts’ of this case are not particularly relevant to responding to this court’s inquiry." We note that the background information provided by the district court is helpful in understanding the nature of these questions; however, any inquiry with respect to the truthfulness of the allegations of racial discrimination is beyond the scope of the questions posed to this Court.