09-2697-cv
Dolan v. Fid. Nat'l Title Ins. Co.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11th day of February, two thousand ten.

PRESENT: GUIDO CALABRESI,
REENA RAGGI,
*Circuit Judges*,
JOHN G. KOELTL,*
*District Judge*.

------------------------------------------------------------------------------------

BRENDAN DOLAN, BRIAN McHALE, JONATHAN RAPAPORT, THOMAS PERRY, MBSF ALABAMA LLC, JOSEPH RAGUSA, KRISTIN RAGUSA, MARSHALL COOK, DOUGLAS BROWN, REBECCA BROWN, ALEX WINTNER, TUTTNAUER USA CO., LTD., LAWRENCE FISHER, RIGOBERTO CAPELLAN, VALERIO GONZALEZ, MARIA ELENA OCHOA, LENNY GONZALEZ, CHRISTOPHER P. AJEMIAN, SARA JULI, VINCENT BARBIERI, TERESA TANNAZZO BARBIERI, MICHAEL LOLLO, MEAGHAN LOLLO, BRANDON RAYMAR, MELINDA RAYMAR, JOHN SHERIDAN,
*Plaintiffs-Appellants*,
v.                                                  No. 09-2697-cv

---

* District Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY, CHICAGO TITLE INSURANCE
COMPANY, TICOR TITLE INSURANCE COMPANY,
FIDELITY NATIONAL FINANCIAL, INC., FIRST
AMERICAN TITLE INSURANCE COMPANY OF
NEW YORK, UNITED GENERAL TITLE INSURANCE
COMPANY, FIRST AMERICAN CORPORATION,
COMMONWEALTH LAND TITLE INSURANCE
COMPANY, LAWYERS TITLE INSURANCE
CORPORATION, LANDAMERICA FINANCIAL
GROUP, INC., STEWART TITLE INSURANCE
COMPANY, MONROE TITLE INSURANCE
COMPANY, STEWART INFORMATION SERVICES
CORPORATION, TITLE INSURANCE RATE
SERVICE ASSOCIATION, INC., STEWART TITLE
GUARANTY COMPANY,

*Defendants-Appellees*.

------------------------------------------------------------------------------------

APPEARING FOR APPELLANTS: GORDON SCHNELL (Jean Kim, Gerard J. Britton, Sam Rikkers, *on the brief*), Constantine Cannon LLP, New York, New York.

APPEARING FOR APPELLEES: BARRY R. OSTRAGER (Kevin J. Arquit, Patrick T. Shilling, *on the brief*), Simpson Thacher & Bartlett, LLP, New York, New York, *for Fidelity National Financial, Inc., Fidelity National Title Insurance Company, Chicago Title Insurance Company, Ticor Title Insurance Company, Commonwealth Land Title Insurance Company, and Lawyers Title Insurance Corporation*.

David M. Foster, Fulbright & Jaworski LLP, Washington, D.C., Mark A. Robertson, Erica A. Reed, Fulbright & Jaworski LLP, New York, New York, *for Stewart Information Services Corporation, Stewart Title Insurance Company, Stewart Title Guaranty Company, and Monroe Title Insurance Corporation*.

James I. Serota, Kenneth A. Lapatine, Stephen L.

2

Saxl, Greenberg Traurig, LLP, New York, New York, *for The First American Corporation, First American Title Insurance Company of New York, and United General Title Insurance Company.*

John A. Herfort, James L. Hallowell, Oliver M. Olanoff, Gibson, Dunn & Crutcher LLP, New York, New York, *for Title Insurance Rate Service Association, Inc.*

Appeal from the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on June 17, 2009, is AFFIRMED.

Plaintiffs, members of a putative class of title insurance consumers, sued defendants, title insurance companies doing business in New York and the Title Insurance Rate Service Association, Inc. ("TIRSA"), alleging a price-fixing conspiracy proscribed by section 1 of the Sherman Act, 15 U.S.C. § 1, and deceptive business practices in violation of New York state law. The district court dismissed the action pursuant to the filed rate doctrine. See Keogh v. Chicago & Nw. Ry. Co., 260 U.S. 156 (1922). We review the dismissal of a complaint de novo, accepting all factual allegations as true and drawing all reasonable inferences in plaintiffs' favor. See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In doing so, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

3

1. Filed Rate Doctrine

The filed rate doctrine "holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers." Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994); see also IA Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 247, at 413 (3d ed. 2006) ("The doctrine operates as a rule against collateral attack: once filed, a rate may not be collaterally attacked in the courts."). The doctrine serves two purposes: (1) it protects against discrimination in rates as between different ratepayers, and (2) it prevents courts from having to determine the reasonableness of rates, a task better suited to regulatory agencies. See Wegoland Ltd. v. NYNEX Corp., 27 F.3d at 19. Thus, "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." Marcus v. AT&T Corp., 138 F.3d 46, 59 (2d Cir. 1998).

2. Plaintiffs' Arguments

On appeal, plaintiffs do not dispute that the challenged title insurance rates are filed with the New York Insurance Department (the "Department") or that they are the only rates defendants may lawfully charge in New York. See N.Y. Ins. Law § 6409(b). Rather, they make five arguments as to why the filed rate doctrine should not apply to their suit. We consider, and reject, each argument in turn.

4

### a. Defective Filing

Plaintiffs submit that the filed rate doctrine does not apply because the challenged rates were improperly filed. Relying on Security Services, Inc. v. Kmart Corp., 511 U.S. 431, 441-42 (1994), they contend that inclusion of alleged commissions to title agents without specific disclosure rendered defendants' filings "incomplete," Appellants' Br. at 20. We disagree. Security Services held that rates filed with the Interstate Commerce Commission, which became "void as a matter of law" under that commission's regulations, 511 U.S. at 437, could not be enforced, see id. at 444. Even if plaintiffs could prove that defendants engaged in a scheme to pay commissions to title agents in violation of New York Insurance Law § 6409(d), we are directed to no statute or regulation voiding defendants' filed rates such that this suit may survive a motion to dismiss.

New York Insurance Law § 6409(b) requires a title insurance company to file "its rate manual, if any, its basic schedule of rates and classification of risks, its rating plan and rules in connection with the writing or issuance of policies of title insurance and . . . thereafter . . . any changes therein." Plaintiffs do not allege defendants' failure to file this information. To the extent the Department required more information to review the rates, the superintendent had the authority to request such information, see id. § 2305(d), and did not do so here. Nor can plaintiffs point to any disclosure obligation in the statutory proscription of commissions to title agents. See id. § 6409(d) ("No title insurance corporation . . . shall make any rebate . . . or give to any applicant for insurance, or to any person, firm, or corporation acting as

5

agent . . . any commission, any part of its fees or charges, or any other consideration or valuable thing, as an inducement for, or as compensation for, any title insurance business."). Section 6409(d) does not reference any filed rate and, therefore, cannot be construed, by itself, to void even those rates high enough to cover the cost of prohibited commissions.

b. Supervisory Authority

Plaintiffs next urge us to fill a "regulatory vacuum" created by the Department's alleged lack of authority over title agents. Appellants' Br. at 28. We decline that invitation. To the extent plaintiffs suggest that the filed rate doctrine should not apply because the Department has not adequately scrutinized the defendants' rates, the argument has no merit. It is well-established that the doctrine applies to all filed rates, not merely those rates investigated before their approval. See Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 417 & n.19 (1986). Further, we are skeptical that any relevant regulatory gap exists. While title insurance agents are excluded from the definition of "insurance agent" in New York Insurance Law § 2101(a)(4), the Department clearly has authority over title insurance rates, see id. § 6409(b). This case tangentially involves the former, but it directly contests the latter. Finally, the nonjusticiability policy underlying the filed rate doctrine reflects not only the court's respect for the judgment and expertise of regulators charged with approving rates, but also its "historical antipathy to rate setting by courts." Arsberry v. Illinois, 244 F.3d 558, 562 (7th Cir. 2001) (Posner, J.); see also Wegoland, Ltd. v. NYNEX Corp., 27 F.3d at 19. Even if we were to conclude that the Department lacked the expertise

6

to determine the portion of title insurance rates attributable to alleged illegal commissions, we would be no more competent than the Department to set title insurance rates, especially when, as here, the agency is charged with balancing a variety of statutory factors to determine their reasonableness. See N.Y. Ins. Law § 2303.

### c. Enforcement of Filing Requirements

Plaintiffs next contend that they do not seek to alter filed rates but rather to enforce requirements of New York Insurance Law. We are not persuaded. In Reiter v. Cooper, a case brought under the Interstate Commerce Act ("ICA") involving freight rates, the Supreme Court held that the filed rate doctrine "assuredly does not preclude avoidance of the tariff rate . . . through claims and defenses that are specifically accorded by the ICA itself." 507 U.S. 258, 266 (1993) (emphasis in original). So, while Reiter did not endorse an "unreasonable rate defense" based on general language that a carrier's rates must be "reasonable," id. (discussing 49 U.S.C. § 10701(a)), it did allow shippers to "assert[] . . . the reparations rights explicitly conferred by" the statute, id.; see also id. at 262-63 & n.1 (noting that then-current 49 U.S.C. § 11705(b)(3) provided that "[a] common carrier . . . is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle").[1]

---

[1] Our sister circuits have applied similar reasoning to the Federal Telecommunications Act of 1996 ("1996 Act"). See TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1236-38 (10th Cir. 2007); Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1084-86 (9th Cir. 2006). The 1996 Act makes a "common carrier . . . liable to the person or persons injured . . . for the full amount of damages sustained in consequence of any such violation of the

We cannot conclude that New York Insurance Law gives plaintiffs a similar right to attack the challenged filed rates based on defendants' alleged payment of commissions in violation of § 6409(d). That subsection bans the payment of commissions, but it does not confer on plaintiffs a private right of action. Cf. id. at 266 (noting that statute provided "claims and defenses"). To the contrary, § 6409(d) expressly provides that the remedy for any violation is a fine. See N.Y. Ins. Law § 6409(d) ("Any person or entity who accepts or receives such a commission or rebate shall be subject to a penalty equal to the greater of one thousand dollars or five times the amount thereof."). Section 6409(b), thus, hardly permits plaintiffs to enforce the statutory ban on title agent commissions through an antitrust challenge to title insurance rates set by the Department.

---

provisions of this chapter," 47 U.S.C. § 206, and expressly provides that "[a]ny person claiming to be damaged by any common carrier . . . may bring suit for the recovery of the damages . . . in any district court," id. § 207; see also Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 52-55 (2007) (holding that § 207 confers private right of action). Indeed, in concluding that "the filed-tariff doctrine does not bar a suit to enforce a command of the very regulatory statute giving rise to the tariff-filing requirement," the Court of Appeals for the Ninth Circuit twice referenced the 1996 Act's private right of action. Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d at 1085 & n.3. No similar private right exists here.

d.     Application to New York Title Insurance

Plaintiffs next argue that there is a "serious question as to whether the [filed rate] doctrine should ever be applied to New York's title insurance system" because, they contend, New York title insurance regulation is not sufficiently "pervasive" and "comprehensive." Appellants' Br. at 33-34. We disagree. This court has held that the doctrine applies to "any 'filed rate,'" Wegoland Ltd. v. NYNEX Corp., 27 F.3d at 18, including rates filed with state agencies, see id. at 20. Here, New York title insurance rates are filed with the Department. Moreover, we have said that the doctrine applies "whenever either the nondiscrimination strand or the nonjusticiability strand underlying [it] is implicated by the cause of action the plaintiff seeks to pursue." Marcus v. AT&T Corp., 138 F.3d at 59. Plaintiffs' request "to strip from the rates all prohibited and otherwise unauthorized costs," Appellants' Br. at 32, effectively asks this court to set New York title insurance rates. It is clear that the filed rate doctrine forbids us from doing so. See, e.g., Wegoland v. NYNEX Corp., 27 F.3d at 19. Finally, our conclusion that the filed rate doctrine applies here is consistent with other cases applying the doctrine to New York insurance rates. See Fersco v. Empire Blue Cross/Blue Shield of N.Y., No. 93 Civ. 4226, 1994 WL 445730, at *2-3 (S.D.N.Y. Aug. 17, 1994); City of New York v. Aetna Cas. & Sur. Co., 264 A.D.2d 304, 693 N.Y.S.2d 139 (1st Dep't 1999); Byan v. Prudential Ins. Co. of Am., 242 A.D.2d 456, 662 N.Y.S.2d 44 (1st Dep't 1997);

9

<u>Minihane v. Weissman</u>, 226 A.D.2d 152, 640 N.Y.S.2d 102 (1st Dep't 1996). Plaintiffs point to no case holding otherwise.[2]

        e.      <u>Injunctive Relief</u>

Plaintiffs finally submit that the district court erred in dismissing their claim for injunctive relief. For the filed rate doctrine to apply, "the antitrust action must be against the rate itself, not against an underlying conspiracy that may have produced the rate." IA Areeda & Hovenkamp, <u>supra</u>, ¶ 247, at 414. Thus, a plaintiff may sue for an "injunction designed to put an end to the conspiracy," so long as that injunction does "not enjoin operation under established rates." <u>Georgia v. Pa. R.R.</u>, 324 U.S. 439, 455 (1945); <u>see also</u> <u>id.</u> (observing that Georgia did not "seek to have any tariff provision cancelled"). In considering whether claims for injunctive relief are barred by the filed rate doctrine, this court has asked "whether an award of injunctive relief would implicate the nondiscrimination or the nonjusticiability strand of the filed rate doctrine," and has awarded injunctive relief when "the filed rate would remain unchanged." <u>Marcus v. AT&T Corp.</u>, 138 F.3d at 62.

---

[2] Plaintiffs cite cases declining to apply the filed rate doctrine in challenges to title insurance kickbacks under the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 <u>et seq.</u> <u>See</u> <u>Alexander v. Wash. Mut., Inc.</u>, No. 07-4426, 2008 WL 2600323, at *2-3 (E.D. Pa. June 30, 2008); <u>Blaylock v. First Am. Title Ins. Co.</u>, 504 F. Supp. 2d 1091, 1098-1103 (W.D. Wash. 2007); <u>see also</u> <u>Alston v. Countrywide Fin. Corp.</u>, 585 F.3d 753, 763-65 (3d Cir. 2009). These cases are inapposite because RESPA provides both an independent right, <u>see</u> 12 U.S.C. § 2607(a), and a remedy, <u>see</u> <u>id.</u> § 2607(d)(2), which plaintiffs do not invoke here.

Applying these principles to plaintiffs' requested injunction, we conclude that the filed rate doctrine is implicated. Plaintiffs ask the court to enjoin the following:

> defendants' concerted efforts and agreement to (i) collectively fix New York title insurance rates, (ii) include in their calculated rates agency commission costs, (iii) embed within these costs kickbacks and other illegal and unauthorized charges, and (iv) hide these supposed costs from regulatory scrutiny by funneling them to and through title agents.

Appellants' Br. at 39. An injunction to remove particular costs from filed rates is exactly the sort of relief the doctrine bars. Although plaintiffs artfully characterize the requested injunction as one to prohibit "concerted efforts," that does not permit their claim to escape application of the filed rate doctrine. Plaintiffs' proposed injunction does not seek to invalidate the New York law allowing insurers to discharge their filing obligations by using a designated rate service organization. See N.Y. Ins. Law § 2306. Nor does it reference New York's statutory policy "to authorize and regulate cooperative action among insurers." Id. § 2301.[3] Plaintiffs merely seek lower title insurance rates, and those rates must be set by the Department, not this court.

---

[3] In Georgia v. Pennsylvania Railroad, the Supreme Court noted that the proposed injunction did not require the Court "to trench on the domain of the Commission." 324 U.S. at 461. The only concerted action plaintiffs plead here is defendants' membership in TIRSA, a licensed rate service organization. Thus, an injunction against defendants' alleged "concerted efforts," by itself, would disrupt the Department's jurisdiction over rate service organizations in a manner not contemplated by Georgia. Compare id. at 456 (noting that Congress did not exempt carriers from antitrust laws or grant agency authority to control or supervise collective rate-setting), with N.Y. Ins. Law §§ 2306 (permitting insurers to file rates through rate service organizations), 2313 (granting authority to license and regulate such organizations), 2320-21 (granting enforcement authority over such organizations).

11

We have considered plaintiffs' other arguments on appeal and conclude that they lack

merit.  Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court